IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

KARL C. MITCHELL,                    )
    Petitioner,                      )
                                 )
v.                                   )          No. 1:25-cv-1067 (RDA/IDD)
                                 )
CLAY CORBIN,                         )
    Respondent.                      )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Karl C. Mitchell's *pro se* amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of his March 11, 2022 conviction for grand larceny of a vehicle, in violation of Virginia Code § 18.2-95, in the Circuit Court for the City of Fredericksburg, Virginia. Dkt. No. 24. Respondent has filed a Rule 5 Answer and a Motion to Dismiss, with a supporting brief and exhibits. Dkt. Nos. 45-47. Petitioner was advised of his rights pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Dkt. No. 42, but he has not responded.[1]  Accordingly, this matter is now ripe for disposition. For the reasons that follow, Respondent's Motion to Dismiss will be GRANTED, and the Petition will be DISMISSED WITH PREJUDICE.

## I.  PROCEDURAL HISTORY

Mitchell is detained pursuant to the March 11, 2022 judgment of the Circuit Court for the City of Fredericksburg. He waived his right to trial by jury and was convicted of grand larceny of a vehicle, in violation of Virginia Code § 18.2-95, on November 30, 2021. Dkt. No. 47-1.

---

[1] Mitchell did file a motion to stay on December 29, 2025, Dkt. No. 52, which was denied on April 15, 2026. Dkt. No. 54. The order also denied, without prejudice, his motions for discovery and to appoint counsel, Dkt. Nos. 42, 43. *Id.* The order also granted him twenty-one days to respond to the motion to dismiss. *Id.*

*Commonwealth v. Mitchell*, Case No. CR21000530-00. The date of the offense was April 29, 2021; he was arrested on May 14, 2021, in Stafford County, Virginia; and he was arraigned on August 24, 2021, in Fredericksburg, Virginia. Mitchell was sentenced to ten years in prison. The court suspended seven years and ten months of his sentence, which left Mitchell with an active sentence of two years and two months.[2]

Mitchell, by counsel, appealed his conviction to the Court of Appeals of Virginia, which affirmed his conviction. Dkt. No. 47-7 at 67-78; *Mitchell v. Commonwealth*, Record No. 0442-22-2, 2023 WL 362827 (Va. Ct. App. Jan. 24, 2023). Mitchell argued "that the evidence failed to prove beyond a reasonable doubt that he was the person responsible for the theft." *Id.* at *1. The court summarized the evidence as follows:

> On April 29, 2021, Zobaer Hashemi was working at a car dealership in Fredericksburg when he saw a man outside looking at trucks. Eventually, the man entered the dealership office, approached Hashemi's desk, and asked about a white 2016 Ford F-350 truck. The man was wearing a tan knit hat, black sunglasses, and a blue surgical mask. He had a large tattoo on the right side of his neck, and his trimmed beard was visible around the edges of his mask.
>
> The man told Hashemi he planned to finance the truck purchase and would like to test drive it. Hashemi accompanied the man outside and started the engine. When Hashemi asked for identification, however, the man produced only a paper copy of a driver's license, claiming he had lost the license itself. Hashemi noticed that the individual depicted in the copy did not resemble the man and stressed that he could not allow the man to drive without a "real ID." Hashemi offered to drive the truck with the man as a passenger and returned to the building to retrieve a vehicle "tag."
>
> The man immediately drove away in the truck, running over some bushes on the dealership lot as he left. Hashemi pursued the truck in his own car, but the man "was cutting [off] cars" and drove through "a couple of red traffic lights." Hashemi eventually lost sight of the truck and abandoned his pursuit. He called 911 and gave the police the truck's vehicle identification number (VIN). The dealership owner provided the police with security camera footage from the office and the dealership

---

[2] The March 11, 2022 sentencing order stated that Mitchell was sentenced to ten years with six months of the sentence was suspended, which resulted in an active sentence two years and six months. The court amended the sentencing order on January 24, 2023, to reflect that the sentence imposed was ten years with ten months suspended, which reduced the total active sentence to two years and two months. Dkt. No. 47-1 at 4-6.

lot.

After reviewing the footage, Officer Wagner of the Fredericksburg Police Department noticed similarities in appearance between the perpetrator and a man who had robbed a Stafford bank two days before the truck theft. Wagner forwarded the footage to Detective James Wright of the Stafford County Sheriff's Office, who was investigating the bank robbery. He also supplied Wright with the stolen truck's VIN.

On May 14, 2021, Detective Wright and a Stafford County deputy sheriff apprehended the appellant and recovered the stolen truck. When the appellant was arrested, he "was . . . with [the truck]" and "another stolen piece of equipment that he was operating." A search of the truck produced a "beanie" cap of the same or similar color as the one worn by the man who stole the truck. Moreover, when the appellant was arrested, he was wearing dark, "DC Brand" "[s]kate shoes" with orange accents, just like those worn by the perpetrator in the dealership footage. The appellant had a full beard and a large "letter[ed]" tattoo on the right side of his neck. Detective Wright testified that the appearance of the tattoo "was consistent with" the appearance of the tattoo on the truck thief's neck in the dealership footage.

On the day of the appellant's arrest, Detective Wright interviewed him. The interview was recorded. After being advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), the appellant acknowledged that he had been arrested because the police said he possessed a stolen truck.[3] He stated that he had recently begun working in "landscaping" and that, when he was arrested, he was with a day laborer whom he had picked up earlier that day to assist him with a landscaping project. Although the appellant initially denied stealing the truck, he eventually asked how the detective might help him if he had, in fact, stolen the truck and other equipment. Wright told the appellant that he could not make any promises but that the appellant's cooperation and honesty would be taken into consideration. The appellant interjected, "I did all that shit." When the detective asked him why, he answered, "You already know why," then added, "I stole that truck," and numerous other items he listed. The appellant explained that, when he robbed a bank two days before the truck theft, he was driving a burgundy truck[,] but he had returned that truck to the dealer after his financing application was rejected.

At trial, the recording of the appellant's interview, as well as the dealership footage, was admitted into evidence. Hashemi testified and identified appellant as the individual who stole the white F-350 truck. At the conclusion of the Commonwealth's evidence, the appellant elected to address the trial court. He stated that "[t]he truck at issue" was part of a "ca[c]he" of property "seized from [his] home and [his] person, in Stafford, on May 14th." He claimed that his admissions to Detective Wright that he used each of the stolen items "to operate a landscaping business" were "coerced." The appellant maintained that he was the

---

[3] Footnote number 3 of the opinion states as follows: "Portions of the interview were played at trial. Detective Wright testified that the recording was "an accurate representation" of his interview with the appellant." *Id.* at *2.

victim of a "vindictive prosecution[]" and asked that the evidence "be stricken on that basis."

*Id.* at *1-2.

Mitchell, by counsel, petitioned the Supreme Court of Virginia for an appeal, and raised the same issue. By order dated July 5, 2023, the court refused his petition for appeal. Dkt. No. 47-8; *Mitchell v. Commonwealth*, Record No. 230122 (Va. July 5, 2023).

On April 1, 2022, while his appeals were pending, Mitchell, proceeding *pro se*, filed a petition for a writ of habeas corpus in the Circuit Court of Stafford County attacking his *Fredericksburg* grand larceny conviction. Dkt. No. 47-3; *Mitchell v. Commonwealth*, CL22-1032 (Stafford Cir. Ct.). The Director of the Virginia Department of Corrections filed a motion to dismiss, without prejudice, because the Stafford County Circuit Court lacked jurisdiction to consider the petition. Virginia's habeas statute, Virginia Code § 8.01-654, provides that "only the circuit court which entered the original judgment order of conviction or convictions complained of in the petition shall have authority to issue writs of habeas corpus." Dkt. No. 47-4 (citing Va. Code § 8.01-654(B)(1)). Mitchell filed a response dated May 19, 2022, Dkt. No. 47-5, and on June 16, 2022, the Stafford County Circuit Court dismissed Mitchell's habeas petition "without prejudice so that Mitchell may file in the jurisdiction in which he incurred the conviction he now challenges, as required by Code § 8.01-654(B)(1)." Dkt. No. 47-6. Mitchell neither appealed the dismissal of his petition nor did he file a habeas petition in either the Circuit Court for the City of Fredericksburg or the Supreme Court of Virginia.[4]

---

[4] The state habeas statute provides that the Supreme Court of Virginia also has original jurisdiction to consider a habeas petition. *See* Va. Code § 8.01-654 ("A petition for a writ of habeas corpus ad subjiciendum may be filed in the Supreme Court or any circuit court showing by affidavits or other evidence that the petitioner is detained without lawful authority.").

4

## II.    FEDERAL PETITION

On April 1, 2025, Mitchell, proceeding *pro se*, initiated this civil action by filing a Petition in the United States District Court for the Western District of Virginia, which that court construed as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[5] Dkt. Nos. 1, 5. The Western District ordered Mitchell to amend his pleading by filing a § 2254 form, Dkt. No. 5 at 1, which he filed on May 5, 2025. Dkt. No. 16. On May 6, 2025, the Western District transferred the Petition to this Court, Dkt. No. 17, which the Clerk filed on June 26, 2025. Dkt. No. 19. On July 16, 2025, the Court reviewed the Petition, found that it was not signed as required Rule 2(c)(5) of the Rules Governing Section 2254 Cases (citing 28 U. S. C. § 2242), and directed Mitchell to file an amended petition to cure his defect. Dkt. No. 23. Mitchell complied and filed an Amended Petition on July 25, 2025. Dkt. No. 24. The Amended Petition raises two claims:

1) Trial counsel incriminated petitioner by "saying [he] was guilty in front of the only witnesses and the factfinder." Dkt. No. 24 at 5.

2) Trial counsel should have "presented evidence to rebut the Commonwealth's because [petitioner is] factually innocent" due to "mental illness." *Id.* at 7.

Mitchell admits in his Amended Petition that he did not raise either claim on direct appeal or by post-conviction petition. *Id.* at 5, 8.

## III.    EXHAUSTION AND DEFAULT

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court, *see* 28 U.S.C. § 2254(b); *Granberry v Greer*, 481 U.S. 129 (1987), which requires that a state prisoner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review

---

[5] The initial pleading was postmarked April 1, 2025. Dkt. No. 1 at 4. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a pleading is deemed filed at the time a prisoner delivers it to the prison authorities for forwarding to the court clerk).

process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Exhaustion requires that a Virginia petitioner must have presented the same factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia. *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002); *see, e.g.*, *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").[6] A claim has not been "fairly present[ed]" for exhaustion purposes if the claim is raised in "a procedural context in which its merits will not be considered." *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

Nevertheless, "[a] claim that has not been presented to the highest state court . . . may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citation omitted). Importantly, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence," also "prevents federal habeas review of the defaulted claim." *Id.* (citation omitted).

Exhaustion requires that "'both *the operative facts* and the controlling legal principles'"

---

[6] *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in *each* appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." (emphasis added)); *Jones v. Sussex I State Prison*, 591 F.3d 707, 712-13 (4th Cir. 2010) ("To provide the state with this opportunity, 'the prisoner must "fairly present" his claim in each appropriate state court . . . , thereby alerting that court to the federal nature of the claim.' The habeas petitioner must raise his claim before every available state court, including those courts—like the Supreme Court of Virginia—whose review is discretionary." (quoting *Reese*, 541 U.S. at 29)).

6

upon which a petitioner relies must have been presented to the state court for review. *Kasi*, 300 F.3d at 501-02 (emphasis added) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *overruled on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011)). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") emphasized the importance of the need to exhaust facts by limiting federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see Muhammad v. Clarke*, 2012 WL 259869, *4 (E.D. Va. Jan. 26, 2012) (holding that, where a petitioner attempts to allege unexhausted facts, the federal court must defer to the state court's finding) (citing *Kasi*, 300 F.3d at 501-02; *Pinholster*, 563 U.S. at 182-83). *Pinholster* accentuated this portion of AEDPA, holding "that the record under review is limited to the record in existence at that same time—*i.e., the record before the state court*." *Id.* (emphasis added). The Fourth Circuit echoed this point in *Porter v. Zook*, 898 F.3d 408 (4th Cir. 2018), finding that the reasonableness of a state court decision is evaluated "'in light of the evidence presented in the State court proceeding.'" *Id.* at 443 (quoting *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015)).[7]

Here, Mitchell admits that his claims are defaulted because he never raised them on either direct appeal or in a proper state habeas petition. If Mitchell attempted to raise such claims by way of a state habeas petition now, each claim would be barred by the Virginia habeas statute of

---

[7] The *Pinholster* Court explained:

What makes the consideration of new evidence strange is not how "different" the task would be, but rather the notion that a state court can be deemed to have unreasonably applied federal law to evidence it did not even know existed. We cannot comprehend how exactly a state court would have any control over its application of law to matters beyond its knowledge.

563 U.S. at 183 n.3.

limitations, Va. Code § 8.01-654(A)(2). The Virginia statute of limitations is an adequate and independent state procedural rule barring federal habeas review, which renders his claims simultaneously exhausted and defaulted. *See Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (holding Va. Code §§ 8.01-654(A)(2) is an independent and adequate state law default). To the extent either of his claims could have been raised at trial and pursued on appeal, the claim would also be defaulted pursuant to the rule of *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), which bars collateral review of issues that could have been raised on appeal, such as sentencing. *See Prieto v. Zook*, 791 F.3d 465, 468 (4th Cir. 2015) (finding sentencing issue defaulted pursuant to *Slayton*, which precluded federal habeas review, absent cause and prejudice or miscarriage of justice exceptions) (citing *Mu'Min v. Pruett*, 125 F.3d 192, 196-97 (4th Cir. 1997)); *Reid v. True*, 349 F.3d 788, 805 (4th Cir. 2003).

## IV.   CAUSE AND PREJUDICE

Federal courts may not review defaulted claims absent a showing of cause and prejudice, or a fundamental miscarriage of justice such as actual innocence. *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) ("To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim." (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991))). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990); *Coleman*, 501 U.S. at 753 ("'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him . . . ." (citation omitted)); *see also Farabee v. Johnson*, 129 F. App'x 799, 802 (4th Cir. 2005) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)) (applying

*Carrier* to a procedural default caused by a petitioner while unrepresented by counsel). For example, "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard." *Carrier*, 477 U.S. at 488 (internal quotation marks and citations omitted). Importantly, a court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).[8]

Here, the factual and legal bases for Mitchell's federal habeas claims were available to him prior to the conclusion of his trial and thus could have been raised during either his direct appeal and/or his state habeas proceeding. As such, Mitchell cannot "show cause for the default" on this ground. Moreover, the record establishes that Mitchell was aware of the basis for each claim. With regard to Claim 1, the alleged claim took place during trial and in open court with Mitchell present. The record also establishes that Mitchell was aware of the facts supporting Claim 2, and that he made an informed decision before trial not to pursue a mental health defense.

Indeed, Mitchell was aware of his alleged "innocence," based upon his alleged mental illness well before his trial. On July 13, 2021, the trial judge (Fredericksburg Circuit Court) and Mitchell's originally appointed counsel (Brenna M. Hill) discussed a pending competency hearing in Stafford County Circuit Court. July 13, 2021 Tr. at 3-7. At the start of his Fredericksburg trial on November 30, 2021, Mitchell's subsequently appointed counsel (Alexander C. Raymond) advised the court that he had spoken with Mitchell "about the option of pleading not guilty by reason of insanity" and Mitchell did "not want to pursue that." Nov. 30, 2021 Tr. at 5. Counsel prefaced that statement by stating there was no "issue[] with competency" but "there's certainly

---

[8] To show "prejudice," a petitioner must show an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

some issues with mental health which Mitchell would freely admit." Nov. 30, 2021 Tr. at 5-6.

Further, in one of several pleadings Mitchell filed in the Fredericksburg proceeding—the Motion

for Appropriate Relief, filed December 20, 2021—Mitchell stated that

> he was not guilty of stealing the truck at issue, as at no time did [he] ever intend to deprive the owner of it permanently or even temporarily. [He] simply chose not to rebut the Commonwealth's evidence, per se, because of and based upon Mr. Raymond's advice. Mr. Raymond even spoke to my innocence by apprising the court, just before the start of trial, that I expressly wished to waive the defense of insanity. But of course, as the record reveals, this same Mr. Raymond—who was "Bound by oath or Affirmation to support th[e] Constitution"—did not even attempt to explain to the court the grounds upon which my choice was made.

Case No. CR21-530 at 66 ("R. at __"). Mitchell's version in his pre-sentence report is consistent

with his making a deliberate choice not to pursue a defense that relied on mental health evidence.

He stated that he "did not oppose the evidence because [he] submitted a defense to have the case

dismissed without regard to the merits. The court erred in finding [him] guilty. However, [he]

merely had the vehicle in [his] possession, [he] did not know it was 'stolen,' nor[] did [he] intend

to deprive the owner of it. And [he] intend[ed] to appeal to the fullest the law allows." R. at 74.[9]

The pre-sentence report indicates that Mitchell's previous "mental health counseling" included

"inpatient and outpatient treatment with the Rappahannock Area Community Services Board

---

[9] *See Hammond v. Hall*, 586 F.3d 1289, 1327 (11th Cir. 2009) (collecting cases and holding that counsel was not ineffective for pursuing a trial strategy that "had the support and permission of his client"); *Lobosco v. Thomas*, 928 F.2d 1054, 1057 (11th Cir. 1991) (finding no ineffective assistance where the defendant "was fully informed of, [and] consented to," defense counsel's strategy of using closing argument to concede the defendant's guilt and begin building a case for mercy based on his contrition); *United States v. Weaver*, 882 F.2d 1128, 1140 (7th Cir. 1989) ("Where a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel."); *see also Jackson v. McQuiggin*, 553 F. App'x 575, 582 (6th Cir. 2014) ("Where a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel." (quoting *Weaver*, 882 F.2d at 1140)); *United States v. Williams*, 631 F.2d 198, 204 (3d Cir. 1980) (no ineffective assistance existed because the defendant ultimately concurred in his trial counsel's tactical decision).

(RACSB) for a competency evaluation," and he reported that he "has ASPD and PTSD."[10]

Finally, through his cross-examination of Detective Wright, trial counsel introduced evidence that Mitchell had been an informant while a prisoner in Georgia, that he had been stabbed, that he felt staff had failed to protect him, and that Mitchell "felt that he was owed several things, you know, monetary stuff, and—and that's the long and short of it." Nov. 30, 2021 Tr. at 69-70. Wright also testified that Mitchell had tried to sue "Georgia," "[o]nce in prison and once when he got released." *Id.* at 70-71. Detective Wright also testified about Mitchell's statements regarding the theft of the truck in Fredericksburg. Mitchell stated when asked him if he stole the truck, he said "I did all of that," "I stole that truck." *Id.* at 56.[11]

---

[10] "ASPD" generally refers to "Antisocial personality disorder, sometimes called sociopathy, is a mental health condition in which a person consistently shows no regard for right and wrong and ignores the rights and feelings of others." Antisocial Personality Disorder, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/antisocial-personality-disorder/symptoms-causes/syc-20353928 (last visited May 22, 2026). "Post-traumatic stress disorder (PTSD) is a mental health condition that's caused by an extremely stressful or terrifying event—either being part of it or witnessing it." *Id.* Mitchell acknowledged the ASPD and PTSD diagnosis in a civil action he filed on August 9, 2017. *Mitchell v. Bobbitt et al.,* No. 1:17-cv-03003-MHC (N.D. Ga. Dec. 12, 2017), Dkt. No.1 at 1.

[11] The trial judge allowed Mitchell to present argument at the close of the evidence. Mitchell argued the prosecution was vindictive because the items seized in Stafford when he was arrested were the basis for his charges in Stafford and other Virginia jurisdictions, which would lead to "successive enhancements to the sentencing guidelines, and thus, the imposable sentences," Nov. 30, 2021 Tr. at 80-82; venue for the offenses should have been Stafford County because that was the jurisdiction where the "initial prosecution" "started," and where his prosecution "commenc[ed]." *Id.* at 82-83. At his sentencing, he argued, "[t]here's other evidence that didn't come out during the trial that would probably change your determination on whether I was particularly—possessed a requisite state of mind to permanently deprive the property, but that wasn't presented *because I thought the vindictive prosecution argument was timely and would get a full hearing.*" Mar. 8, 2021 Tr. at 13 (emphasis added). Mitchell added that it "was more or less negligent" to allow him "to do what [he] did, not believing—or not carrying out [the victim's] lawful duty to ensure that [he] wasn't able to take that truck." *Id.* Mitchell continued, alleging that the government was using electromagnetics to monitor [his] brain," and he referenced filing a federal complaint to that effect in the United States District Court for the Southern District of Georgia, *see supra* note 10, that he had been confined for five years, and that "[m]aybe it was the confinement that played a trick on [his] mind[,] and it was just a delusion. But I don't necessary

In sum, the record indicates that Mitchell knew about his mental health issues before his trial on the Fredericksburg indictment, he had a recent competency evaluation, he had discussed using mental health evidence (including through an insanity plea) with his attorney, and he chose not to pursue using mental health evidence. The record also indicates that Mitchell sought records on March 31, 2023, in order to pursue a habeas petition, R. at 286, and then waited for approximately one year to file his federal petition.[12] Therefore, Mitchell cannot establish cause for his defaults.

## V.   STATUTE OF LIMITATIONS

Respondent also seeks dismissal of the federal habeas petition, specifically the Amended Petition, as untimely. Under AEDPA, a petition for a writ of habeas corpus must be dismissed if it is filed more than one year after (1) the judgment becomes final; (2) any state–created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due

---

believe that if that evidence would have came out through the trial that you would have found me guilty." *Id.* at 14. Mitchell ended by stating his "attorney had said that an insanity defense would be most proper, he thought. But like I said, I thought vindictive prosecution would be good enough." *Id.* at 15.

[12] Indeed, Mitchell filed a civil action on February 14, 2024, *Karl C. Mitchell v. The Attorney Generals*, No. 1:24-cv-00232-RDA-IDD (E.D. Va. Sept. 3, 2025), in which he alleged that in April 2021, he

> took property form businesses in Culpepper, Fauquier, Fredericksburg, and Hanover, as well as money from a bank (using a note) in Stafford. [He] was under substantial duress, as [he] was emotionally instable, broke, nearing homelessness— [his] father threatened to evict [him]. [He] decided to start a landscaping business or, if [he] couldn't, kill [himself]. [He] concluded that [he] couldn't commit a crime, reasoning that the Attorneys Generals owe me more than the cost of what [he] planned to take and couldn't allow [him] to cause any property loss, and, would dispatch law enforcement if [he] posed an actual threat to do so. [He] didn't intend to deprive the businesses or bank of anything.

*Id.*, Dkt. No. 1 at 2-3.

diligence. 28 U.S.C. § 2244(d)(1)(A)–(D). This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post–conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1)(A), (d)(2).

Mitchell's direct appeal was final on July 5, 2023. This judgment became final ninety days after July 15, 2023, when the time period to appeal the convictions to the United States Supreme Court expired. *Harris v. Hutchinson*, 209 F.3d 325, 328 n.1 (4th Cir. 2000). Accordingly, his direct appeal was final on Tuesday, October 3, 2023. Absent statutory or equitable tolling his Amended Petition is untimely.

### A.   Statutory Tolling

In calculating the one–year period, the Court must exclude the time during which properly filed state collateral proceedings are pending. *See* 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Mitchell filed one state habeas petition, which was dismissed without prejudice on June 16, 2022, and he did not appeal. Consequently, absent equitable tolling, Mitchell's Amended Petition is untimely.

### B. Equitable Tolling

To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace*, 544 U.S. at 418). The petitioner generally is obliged to specify the steps he took in diligently pursuing his federal claim.

13

*Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001). In addition,

> [t]he word "prevent" requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.

*Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000); *see also Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003). Here, Mitchell argues that his Amended Petition is timely because of his allegation of actual innocence in Claim 2. As set out above, the allegation of actual innocence has no merit. Accordingly, Mitchell's claims in his § 2254 petition are not only defaulted, but his petition is also untimely.

## VI.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Respondent's Motion to Dismiss (Dkt. No. 45) is GRANTED; and it is

FURTHER ORDERED that the Amended Petition is DISMISSED WITH PREJUDICE.

To appeal this decision, Petitioner must file a written notice of appeal with the Clerk's office within thirty (30) days of the date of this Order. *See* Fed. R. App. P. 4(a). A written notice of appeal is a short statement indicating a desire to appeal and including the date of the Order the petitioner wishes to appeal. Failure to file a timely notice of appeal waives the right to appeal this decision. Petitioner also must obtain a certificate of appealability ("COA") from a circuit justice or judge. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). The Court expressly declines to issue a COA.[13]

---

[13] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a COA. 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented

The Clerk is directed, pursuant to Federal Rule of Civil Procedure 58, to enter final judgment in favor of Respondent Clay Corbin; to send a copy of this Order and the accompanying Memorandum Opinion to Petitioner Karl C. Mitchell and counsel of record for Respondent; and to close this civil action.

It is SO ORDERED.

/s/
Rossie D. Alston, Jr.
United States District Judge

Alexandria, Virginia
May 29, 2026

---

were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Petitioner fails to meet this standard.